UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- x

UNITED STATES OF AMERICA

   - against -

EVAN ZAUDER,

               Defendant.

S1 12 Cr. 659 (LAK)

---------------------------------------------------------------------- x


# **SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**



PREET BHARARA
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007



Paul M. Monteleoni
Assistant United States Attorney
- Of Counsel -

# TABLE OF CONTENTS

**BACKGROUND** ............................................................................................................ **1**

    A.     The Superseding Information and the Plea ................................................ 1

    B.     The Offense .................................................................................................... 2

    C.     The Defendant's Criminal History ........................................................... 6

    D.     The Guidelines Calculation ...................................................................... 6

**ARGUMENT** ................................................................................................................. **9**

    A.     The Nature of the Offense Conduct and Zauder's Risk of Reoffense
            Render a Substantial Sentence Necessary .................................................. 9

           1.    Zauder's Offense Conduct Is Extraordinarily Serious ......................... 9

           2.    Zauder Poses a Substantial Risk of Recidivism ................................ 13

    B.     *United States* v. *Dorvee* and Other Cases Not Involving Contact With
            Minors Are Inapposite ............................................................................... 15

    C.     The Treatment of Zauder's Sexual Contact with Minor-1 Under New
            Jersey Law ................................................................................................... 18

    D.     Sentencing Practices in Child Pornography Cases ................................. 20

**CONCLUSION** ............................................................................................................ **24**

# TABLE OF AUTHORITIES

**Federal Cases**

*Gall* v. *United States*, 552 U.S. 38 (2007) .................................................................. 17

*New York* v. *Ferber*, 458 U.S. 747 (1982) ................................................................... 12

*United States* v. *Aumais*, 656 F.3d 147 (2d Cir. 2011) .............................. 12, 13, 18, 19

*United States* v. *Booker*, 543 U.S. 220 (2005) ............................................................ 17

*United States* v. *Conde*, 12 Cr. 593 (PGG) ................................................................ 25

*United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005) ............................................... 17

*United States* v. *Day*, 10 Cr. 177 (CM) ...................................................................... 25

*United States* v. *Decker*, 12 Cr. 343 (CS) ................................................................. 25

*United States* v. *Delmarle*, 99 F.3d 80 (2d Cir. 1996) ................................................. 7

*United States* v. *Dorvee*, 616 F.3d 174 (2d Cir. 2010) ............................................... 18

*United States* v. *Fagans*, 406 F.3d 138 (2d Cir. 2005) ............................................... 17

*United States* v. *Fanelli*, 11 Cr. 237 (CS) ................................................................. 25

*United States* v. *Fantau*, 13 Cr. 358 (DLC) .............................................................. 26

*United States* v. *Goldberg*, 491 F.3d 668 (7th Cir. 2007) .......................................... 12

*United States* v. *Gouse*, 468 F. App'x 75 (2d Cir. 2012) (summary order) ................ 11

*United States* v. *Johnson*, 221 F.3d 83 (2d Cir. 2000) ............................................... 12

*United States* v. *Mendez-Rojas*, 11 Cr. 929 (PAE) ................................................... 25

*United States* v. *Miller*, 594 F.3d 172 (3d Cir. 2010) ................................................ 11

*United States* v. *Oehne*, 698 F.3d 119 (2d Cir. 2012) .......................................... 18, 19

*United States* v. *Sherman*, 268 F.3d 539 (7th Cir. 2001) ........................................... 12

*United States* v. *Tutty*, 612 F.3d 128 (2d Cir. 2010) .................................................. 18

**Federal Statutes**

18 U.S.C. § 2252A(a)(1), (a)(2)(B) ................................................................................ 2

18 U.S.C. § 2252A(a)(5)(B) ........................................................................................... 2

18 U.S.C. § 2422(b) ........................................................................................... 1, 19, 20

18 U.S.C. § 2422(b) (2006) .......................................................................................... 19

18 U.S.C. § 3553(a)(2) .................................................................................................. 16

Adam Walsh Child Protection and Safety Act, Pub. L. No. 109-248, 120 Stat. 587 (July 27, 2006) .......................................................................................................................... 19

**State Statutes**

N.J. Stat. Ann. § 2C:14-2(c)(4) ............................................................... 18, 20

N.J. Stat. Ann. § 2C:43-6(a)(2) ............................................................... 18, 20

N.J. Stat. Ann. § 2C:43-6(b) ...................................................................... 19

N.J. Stat. Ann. § 2C:47-3(d) ...................................................................... 19

N.J. Stat. Ann. § 2C:47-3(f) ...................................................................... 19

N.J. Stat. Ann. § 2C:47-3(g) ...................................................................... 19

N.J. Stat. Ann. § 2C:47-5(a) ...................................................................... 19

**Other Authorities**

U.S. Sentencing Commission, *2012 Sourcebook of Federal Sentencing Statistics* ..................... 23

U.S. Sentencing Commission, *Report to Congress: Federal Child Pornography Offenses* .. 12, 22

U.S. Sentencing Commission, *Statistical Information Packet: Fiscal Year 2012, Southern District of New York* ....................................................................... 21, 22

U.S.S.G. § 1B1.3(a)(4) ............................................................................... 9

U.S.S.G. § 2G2.2 .............................................................................. 16, 21

U.S.S.G. § 2G2.2 app. n.1 ...................................................................... 8, 9

U.S.S.G. § 2G2.2(a)(2) ............................................................................ 6

U.S.S.G. § 2G2.2(b)(2) ............................................................................ 6

U.S.S.G. § 2G2.2(b)(3)(F) ........................................................................ 6

U.S.S.G. § 2G2.2(b)(4) ............................................................................ 7

U.S.S.G. § 2G2.2(b)(5) ...................................................................... 7, 8, 9

U.S.S.G. § 2G2.2(b)(6) ............................................................................ 7

U.S.S.G. § 2G2.2(b)(7)(D) ........................................................................ 7

U.S.S.G. § 3D1.2 app. n.5 ...................................................................... 8, 9

U.S.S.G. § 3D1.2(a) ................................................................................ 7

U.S.S.G. § 3D1.2(b) ................................................................................ 8

U.S.S.G. § 3D1.2(c) .......................................................................... 6, 7, 8

U.S.S.G. § 3D1.2(d) ................................................................................ 6

U.S.S.G. § 3E1.1(a) ............................................................................. 7, 14

U.S.S.G. § 3E1.1(b) ............................................................................. 7, 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

UNITED STATES OF AMERICA

     - against -

EVAN ZAUDER,

              Defendant.

------------------------------------------------------------------- X

                 S1 12 Cr. 659 (LAK)

The Government respectfully submits this memorandum in advance of the defendant's sentencing, which is scheduled for December 18, 2013, at 3:00 PM.  The Government does not oppose the imposition of a sentence below the Guidelines range of 262 to 327 months that it believes is applicable, but the Government strongly believes that a sentence substantially higher than the 10-year mandatory minimum is necessary and appropriate to reflect the seriousness of the offense conduct.  As set forth below, the defendant's offense conduct involved sexual conduct with a number of minors, the defendant violated the terms of his pretrial release by accessing child pornography on a computer that he knew was monitored, and the Government believes the defendant poses a substantial risk of recidivism.  Accordingly, the Government considers this case to be quite unlike those in which courts have imposed more lenient below-Guidelines sentences.

## **<u>BACKGROUND</u>**

### A.    **The Superseding Information and the Plea**

On January 22, 2013, Superseding Information S1 12 Cr. 659 (LAK) (the "Information") was filed, in three counts, charging Zauder with enticement of a minor to engage in illegal sexual activity, in violation of Title 18, United States Code, Section 2422(b) (Count One); with

transportation, receipt and distribution of child pornography, in violation of Title 18, United States Code, Sections 2252A(a)(1) and (a)(2)(B) (Count Two); and with possession of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(5)(B) (Count Three).  D.I. 19.[1]  On that date, Zauder pled guilty to all counts of the Information pursuant to a plea agreement.  D.I. 22.

### B.    The Offense

As set forth in the presentence investigation report, on May 1, 2012, acting on a tip that an informant had discovered child pornography on Zauder's desktop computer, FBI agents visited Zauder's apartment in Manhattan, and conducted a consensual interview with Zauder.  PSR ¶¶ 11-13.[2]  Zauder acknowledged owning several electronic devices, including a Macintosh desktop computer in his bedroom.  The agents then sought, obtained, and executed a search warrant for the desktop computer and other electronic media.  PSR ¶ 13.  On-site preliminary examination of the desktop computer revealed hundreds of images and videos of child pornography, and Zauder was arrested.  *Id.*

Zauder was charged by complaint with possession of child pornography and released on bail on May 4, 2012 by Judge Gorenstein on a $2 million personal recognizance bond with 5 cosigners, secured by $75,000 and two residential real properties.  D.I. 3.  The conditions of Zauder's release included home detention with his aunt and uncle at their house in West Orange, New Jersey, the monitoring of his computer activity, and a condition that Zauder not view sexually explicit images involving children or child erotica.  *Id.*

---

[1] Citations to "D.I." refer to docket items in S1 12 Cr. 659 (LAK) (S.D.N.Y.).

[2] Citations to "PSR" refer to the second disclosure of the presentence investigation report, dated December 10, 2013.

Employees of the United States Pretrial Services Agency ("Pretrial Services") installed computer monitoring software on a Dell laptop computer, including a personalized login for Zauder and an explicit onscreen warning that Zauder's computer activity was being monitored. PSR ¶ 15.  On June 5, 2012, a Pretrial Services officer reviewed Zauder's activity on the Dell laptop computer and discovered that the monitoring software revealed that Zauder was visiting websites and viewing images depicting young males undressed posing in a sexually suggestive manner and engaging in sex acts.  D.I. 10.  The software generated a data file revealing that Zauder had searched for sexually explicit material online between May 29, 2012 and June 3, 2012, and included a number of screen images showing a web browser accessing pages with photographs of young males depicted in a sexually suggestive manner and sexually explicit images of young males.  Although the age of the individuals in the sexually explicit images has not been conclusively established, several of them appear to be minors.  PSR ¶ 15.

Based in part on the report of Zauder's usage of the monitored activity, the Government sought to revoke Zauder's bail.  PSR ¶ 16.  The Honorable Michael H. Dolinger, United States Magistrate Judge for the Southern District of New York, found that Zauder's use of the monitored computer had violated the terms of his pretrial release and revoked his bail. Additionally, pursuant to a search warrant, agents recovered the Dell laptop computer and found one image of apparent child pornography on it.  The screen images captured on the data file generated by the computer monitoring software were not found on the Dell laptop's hard drive.[3]

---

[3] In his objections to the presentence investigation report, Zauder denies having configured his monitored computer to avoid creating copies of the images he observed while on pretrial release. *See* PSR at 28-29.  Re-examination of this computer has revealed that the computer accessed several sites reported by the monitoring software using the Google Chrome browser while it was

Pursuant to the May 1, 2012 search warrant and a subsequent search warrant, agents recovered from Zauder's apartment, among other items, two Macintosh laptop computers and a Memorex DVD belonging to Zauder.   As set forth in detail in the PSR, forensic examination subsequently revealed hundreds of images and videos of child pornography on these devices, and revealed that Zauder had used Skype file transfer to receive and transmit multiple images and videos of child pornography, including child pornography involving prepubescent minors and child pornography containing sadistic or masochistic material.  *See* PSR ¶¶ 17-19.

In addition to the child pornography, forensic examination of Zauder's electronic devices revealed that Zauder had sexually explicit contact with minors.  Specifically, Skype chat logs revealed multiple text chats between Zauder and three minors, as well as additional text chats between Zauder and apparent minors who have not yet been conclusively identified.  PSR ¶ 19.

One of the minors who has been identified, Minor-1, engaged in a Skype text chat with Zauder on or about April 14, 2011, in which Zauder asked Minor-1 if he wanted to meet in person with Zauder.  PSR ¶ 20.  Zauder and Minor-1 met in a car in a park in New Jersey, and Zauder received oral sex from Minor-1.  PSR ¶ 20.  In a text chat with a third party two weeks after the encounter with Minor-1, Zauder described convincing Minor-1 to perform oral sex on him.  PSR ¶ 21.

After the encounter, Minor-1 and Zauder engaged in a series of additional Skype text chats in which both Minor-1 and Zauder proposed meeting again for sexual contact, but no additional meetings took place.  PSR ¶ 21.  Minor-1 also sent Zauder sexually explicit pictures of

---

in a special browsing mode (and not in the default public browsing mode), but the Government has no direct evidence as to how the browser came to be configured in that way.

himself; these images were found on Zauder's MacBook Air laptop computer.  PSR ¶ 21.

FBI agents spoke to Minor-1 in a videotaped interview.  Minor-1 initially denied meeting in person anyone he met on the Internet.  He was then shown a printout of a portion of his April 14, 2011 chat session with Zauder (this portion did not contain discussions of meeting in person), and told agents that he met Zauder in a park in New Jersey and performed oral sex on Zauder.[4]

Another of the minors who has been identified, Minor-2, engaged in a Skype text chat with Zauder on or about November 23, 2010.  During that text chat session, Zauder induced Minor-2 to display his genitals to Zauder through simultaneous live Internet video, and both Zauder and Minor-2 masturbated.  No saved video of this chat session was found, but the text suggests that  Zauder asked the Minor-2 to display his genitals, Minor-2 complied, and both Zauder and Minor-2 masturbated.  PSR ¶ 23.  Minor-2 confirmed the accuracy of the transcript of the text and video chat.  PSR ¶ 23.

Another minor who has been identified, Minor-3, engaged in a Skype text chat with Zauder involving simultaneous live Internet video.  As set forth in the PSR, although Minor-3 denied to FBI agents that Zauder induced Minor-3 to engage in sexual conduct, the text of the chat suggests otherwise.  *See* PSR ¶ 24.

Additionally, Zauder engaged in Skype text chats that appeared to reflect an additional in-person meeting with an individual who represented himself as a 15-year-old, but whose age

---

[4] As noted in the PSR, FBI agents spoke to Minor-1 in a videotaped interview and he confirmed this encounter, but later apparently told his parents that the FBI agents conducting the interview had pressured Minor-1 into saying what he said in the interview.  PSR ¶ 22.  The video recording of this interview, which is available for the Court's inspection, shows that the agents did not pressure Minor-1, and Minor-1's parents have subsequently not persisted with the claim that the agents pressured Minor-1 and have cooperated in the investigation. PSR ¶ 22.

law enforcement has not been able to confirm independently (Individual-2). In a November 3, 2011 text chat, Zauder apparently arranged to pick up Individual-2 for an encounter in Zauder's car, PSR ¶ 26, and chats in February of 2012 between Zauder and Individual-2 suggest that the November 2011 encounter took place and involved Zauder performing oral sex on Individual-2, PSR ¶ 27.

Zauder also engaged in Skype text chats that appeared to involve live video with several other individuals who represent themselves as minors, and which appeared to involve the apparent minors exposing their genitals to Zauder over video, but saved videos were not recovered and the FBI has been unable to conclusively confirm whether or not these individuals were minors. PSR ¶ 25.

### C. The Defendant's Criminal History

The defendant has no known prior criminal history.

### D. The Guidelines Calculation

Under the November 1, 2012 United States Sentencing Guidelines manual ("U.S.S.G."), Zauder's Sentencing Guidelines range is 262 to 327 months.[5] Counts One through Three are grouped together into one Group, U.S.S.G. § 3D1.2(c), (d), which has a base offense level of 22, U.S.S.G. § 2G2.2(a)(2). Zauder's offense level is increased by two levels because the material involved a prepubescent minor, *id.* § 2G2.2(b)(2), by another two levels because the offenses involved distribution, *id.* § 2G2.2(b)(3)(F), by four levels because the offense involved material

---

[5] The plea agreement, which was entered into in January of 2013, stipulates that the 2012 Sentencing Guidelines manual applies to this case, though the analysis would be the same under the November 1, 2013 manual.

that portrayed sadistic or masochistic conduct or other depictions of violence, *id.* § 2G2.2(b)(4),[6]

by five levels because the defendant engaged in a pattern of activity involving the sexual abuse

or exploitation of a minor, *id.* § 2G2.2(b)(5), by two levels because the offense involved the use

of a computer or an interactive computer service, *id.* § 2G2.2(b)(6), and by five levels because

the offense involved 600 or more images, *id.* § 2G2.2(b)(7)(D).  Zauder's offense level is

reduced by three levels because of his timely acceptance of responsibility.  U.S.S.G. § 3E1.1(a),

(b).  Accordingly, Zauder's adjusted offense level is 39.

 With no criminal history points, Zauder is in Criminal History Category I, resulting in a

262-327 month advisory Guidelines range.

 The United States Probation Office disagrees with this calculation, concluding that Count

One cannot group with Counts Two and Three because they involved different victims, and

further concluding that the five-level upward adjustment in U.S.S.G. § 2G2.2(b)(5), due to "a

pattern of activity involving the sexual abuse or exploitation of a minor," does not apply since

that pattern includes the conduct charged in Count One, which the Probation Office concludes is

not grouped with Counts Two and Three.  *See* PSR ¶¶ 36, 41; *id.* at 27-28.  However, as the

Government set forth in its objections to the presentence investigation report, under U.S.S.G.

§ 3D1.2(c), there is no requirement that multiple counts have the same victim.  Instead, under

that subsection, all that is required is that "one of the counts embodies conduct that is treated as a

specific offense characteristic in, or other adjustment to, the guideline applicable to another of

the counts."  U.S.S.G. § 3D1.2(c).  This is in contrast to U.S.S.G. § 3D1.2(a) and (b), each of

---

[6] Several of the images and videos of child pornography, in which young children were anally
penetrated by adult males or inanimate objects, qualify for this enhancement because the conduct
"would have to be painful," *United States* v. *Delmarle*, 99 F.3d 80, 83 (2d Cir. 1996).

which explicitly require that the counts to be grouped involve the same victim.  *See* U.S.S.G.

§ 3D1.2(a) ("When counts *involve the same victim* and the same act or transaction." (emphasis

added)); § 3D1.2(b) ("When counts *involve the same victim* and two or more acts or transactions

connected by a common criminal objective or constituting part of a common scheme or plan."

(emphasis added)).

Count One embodies conduct that is treated as a specific offense characteristic in, or

other adjustment to, the guidelines applicable to Counts Two and Three, namely the five-level

adjustment under U.S.S.G. § 2G2.2(b)(5).  That adjustment applies "whether or not the abuse or

exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C)

resulted in a conviction for such conduct."  U.S.S.G. § 2G2.2 app. n.1.  Pursuant to this explicit

directive, the conduct in Count One (and the uncharged conduct involving Minor-2) constitutes a

specific offense characteristic of the conduct in Counts Two and Three.  Accordingly, grouping

is proper under § 3D1.2(c) even though there are separate victims.  *See* U.S.S.G. § 3D1.2 app.

n.5 (noting that obstruction of justice, "which represents a Chapter Three adjustment and

involves a different harm or societal interest than the underlying offense, is covered by

subsection (c) even though it is not covered by subsection (a)"); *cf. id.* (noting that a bank

robbery and a separate assault would not group where the injury from the assault "*would not be a*

*specific offense characteristic* to the robbery and would represent a different harm" (emphasis

added)).[7]

_____

[7] Even if the counts did not group together, there is no basis for not applying the upward
adjustment under U.S.S.G. § 2G2.2(b)(5).  The PSR declines to apply it "[b]ecause Count 1 is
being treated as an independent group for guidelines calculation purposes," PSR ¶ 41, but this is
not a basis for declining to apply an otherwise applicable adjustment, especially considering that

Thus, the Guidelines calculation stipulated in the plea agreement, in which all three counts form a single Group resulting in a 262 to 327-month Guidelines range, applies.

## ARGUMENT

### A.    The Nature of the Offense Conduct and Zauder's Risk of Reoffense Render a Substantial Sentence Necessary

The Government does not oppose the imposition of a sentence below the applicable Guidelines range of 262 to 327 months, but the Government strongly believes that a sentence substantially higher than the 10-year mandatory minimum is necessary and appropriate to reflect the seriousness of the offense conduct.  The Government acknowledges that, as set forth in the defendant's sentencing submission, the defendant's history and characteristics include some mitigating factors.  However, the defendant's repeated sexual contacts with minors and his risk of recidivism, especially in light of his violation of his terms of pretrial release, warrant a substantial sentence exceeding the mandatory minimum.

### 1.    Zauder's Offense Conduct Is Extraordinarily Serious

This is a case in which the defendant not only possessed and distributed child pornography, but also sexually exploited multiple minors.  Zauder pled guilty in Count One to using the Internet to entice Minor-1 to meet him and perform oral sex on him.  Moreover, Zauder

---

U.S.S.G. § 2G2.2(b)(5) does not even require the instances of abuse to have resulted in convictions, U.S.S.G. § 2G2.2 app. n.1.  That is, Zauder's pattern of abuse or exploitation of a minor is relevant conduct for his offenses in Counts Two and Three whether or not those counts grouped with Count One.  *See* U.S.S.G. § 1B1.3(a)(4) (noting that the applicability of a specific offense characteristic shall be determined on the basis of several factors and "any other information specified in the applicable guideline").  Accordingly, the grouping of Count One with Counts Two and Three actually limits, not enhances, what Zauder's sentencing exposure would have been had those counts been treated separately.  *See* U.S.S.G. § 3D1.2 app. n.5 ("This provision prevents 'double counting' of offense behavior.").

9

also induced Minor-2, also a stranger met through the Internet, to masturbate for him and display his genitals in a video chat session.  PSR ¶ 23.  Indeed, Zauder does not dispute the facts in the presentence investigation report indicating that Zauder engaged in activity which appears to have been additional similar webcam sessions with other minors, PSR ¶¶ 24-25, 29, and an additional in-person encounter in circumstances very similar to Zauder's encounter with Minor-1, PSR ¶¶ 26-27; *cf.* PSR ¶¶ 20-21.  This conduct is extraordinarily serious.  Perhaps a telling indication of the emotional impact this conduct had on Minor-1 can be found in Minor-1's attempts to deny it, by claiming he was coerced into making it up, after it was disclosed to his parents.[8]  Zauder's repeated sexual contact with minors was an egregiously harmful course of conduct that took advantage of those who are most in need of the law's protection, and that necessitates a commensurately severe sentence.

Although Zauder's actual exploitation of children is the most egregious aspect of his offense conduct, Zauder's collection and trading of large quantities of child pornography was itself very serious.  The defendant's claim that the severity of his conduct cannot be measured by the number of images downloaded, Def.'s Mem. 12, seriously misapprehends the nature of the real harms caused by his child pornography offenses.  No matter how long it takes to download, *cf.* Def.'s Mem. 12, each image of child pornography was created out of the abuse of a minor. The fact that Zauder did not create these images hardly makes his conduct in collecting and distributing child pornography victimless.  Possession of videos and images of abuse, alone, fosters a market for more abuse.  *See, e.g.*, *United States* v. *Gouse*, 468 F. App'x 75, 78 (2d Cir. 2012) (summary order) (affirming 120 month sentence where district court had "observed that,

---

[8] *See supra* note 4.

contrary to [the defendant's] contention, his crimes are not victimless because they create[] a

market for child pornography and thus harm children, scarr[ing] [them] for life" (internal

quotation marks omitted)); *United States* v. *Miller*, 594 F.3d 172, 189 (3d Cir. 2010)

("[P]ossession of even a small number of images of child pornography contributes to the

victimization of children and creates a market for child abuse." (internal quotation marks

omitted)).

     Even more harmful than mere possession is the defendant's actual distribution of it.

"Such dissemination of child pornography is likely to expand the market for it and thus to cause

more harm than mere possession."  *United States* v. *Johnson*, 221 F.3d 83, 98 (2d Cir. 2000); *see*

*also, e.g.*, *United States* v. *Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007) ("Young children were

raped in order to enable the production of the pornography that the defendant both downloaded

and uploaded—both consumed himself and disseminated to others. The greater the customer

demand for child pornography, the more that will be produced.").  Moreover, there are special

harms associated with the distribution of child pornography, even if such distribution did not

expand the market—though it does.  "The 'materials produced are a permanent record of the

children's participation and the harm to the child is exacerbated by their participation.'" *United*

*States* v. *Aumais*, 656 F.3d 147, 152 (2d Cir. 2011) (affirming Guidelines sentence of 121

months) (quoting *New York* v. *Ferber*, 458 U.S. 747, 759 (1982)).  "'Because the child's actions

are reduced to a recording, the pornography may haunt [the child] in future years, long after the

original misdeed took place.'"  *Aumais*, 656 F.3d at 152 (quoting *Ferber*, 458 U.S. at 759 n.10);

*see also, e.g.*, *United States* v. *Sherman*, 268 F.3d 539, 547 (7th Cir. 2001) ("The possession,

receipt and shipping of child pornography directly victimizes the children portrayed by violating

11

their right to privacy.").  As the Sentencing Commission recognized in a detailed report issued

this year:

> [C]hild pornography victims suffer due to continued circulation of
> their images. . . . . As one victim stated, "[u]nlike other forms of
> exploitation[], this one is never ending.  Everyday people are
> trading and sharing videos of me as a little girl being raped in the
> most sadistic ways."

U.S. Sentencing Commission, *Report to Congress: Federal Child Pornography Offenses* ("Child

Pornography Report") 112, 113, *available at*

http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_Reports/Se

x_Offense_Topics/201212_Federal_Child_Pornography_Offenses/index.cfm.

This assessment is borne out by the victim impact statements submitted in this case.

Regardless of whether they establish eligibility for restitution under the Second Circuit's

precedents, *see Aumais*, 656 F.3d at 155, they powerfully express the anguish that the subjects of

child pornography feel at the knowledge that the images and videos of their abuse are being used

by individuals like Zauder for sexual gratification.  Indeed, many of these victim impact

statements reflect the traumatic impact of having been subjects in child pornography.  One

victim writes, "Currently, I am homeless.  I did poorly in school and cannot hold a job.  If I apply

for a job that needs a background check, I am worried that these pictures will surface."  Letter of

Tanya Hankins, Esq. (transmitted to Court Nov. 19, 2013) Att. 1 at 4; *see also, e.g.*, Victim

Impact Statement of J.L. (transmitted to Court May 16, 2013) ("Not a week goes by where I

don't have nightmares.  It feels hard to live som[e]times.").  The Government respectfully

submits that in imposing sentence the Court should weigh the impact on these victims carefully,

and consider the harms Zauder caused both to them, by using their images and videos for sexual

gratification and thus perpetuating their suffering, and to other potential victims by contributing to demand for such images and videos and thus making it incrementally more likely that more victims will be abused in the future.

2.      Zauder Poses a Substantial Risk of Recidivism

Compounding the seriousness of Zauder's conduct is the substantial risk that he will repeat it in the future.  Though Zauder attempts to downplay the risk of his recidivism, it is a deeply concerning prospect and should be addressed by a substantial prison term.  Dr. Richard B. Krueger, one of Zauder's expert evaluators, overall considered Zauder's risk of reoffense to be low, but even his report contained some mixed findings, most notably that on one of the diagnostic instruments, the Static-99R, Zauder's risk of reoffense is Moderate-High.  Def.'s Mem. Ex. 55 at 9.  Although Dr. Krueger rated other indicators lower, a number of factors in Zauder's case give cause for serious caution in evaluating the risk that Zauder will reoffend.  Dr. Shoshanna Must, the Probation Office's evaluator, scored Zauder's risk of reoffense as Moderate-High based on the conjunction of the Static-99R and the Stable-2007 instrument, a result statistically correlated with a 5-year recidivism rate for sexual reoffenses of 16.8%.  Def.'s Mem. Ex. 59 at 14.  Zauder's treating psychiatrist Dr. Meg Kaplan, though opining that Zauder's risk of reoffense is low, does not address this finding in her responsive letter.

Beyond this quantitative metric, Dr. Must also qualitatively found that Zauder has "a strong sexual interest in underage males, pro-offending attitudes, and a sense of intellectual superiority that allowed him to believe he could break societal rules without being detected." Def.'s Mem. Ex. 59 at 15.  Dr. Kaplan's responsive letter takes some issue with this assessment, but does not directly rebut its core points.  Instead of claiming Zauder does not have pro-offending attitudes, Dr. Kaplan essentially acknowledges that he has them, saying that he has

13

"worked hard and earnestly on his attitudes" and "continues to work on them."  Def.'s Mem. Ex. 56 at 1-2; *see also* Def.'s Mem. Ex. 55 at 7 (Dr. Krueger's report describing initial scores on "Bumpy R" and "Bumpy M" instruments indicating "substantial" numbers of cognitions justifying offense behavior initially, decreasing with later administration of tests).  And Dr. Kaplan does not exactly deny that Zauder has a sense of intellectual superiority.  Def.'s Mem. Ex. 56 at 2 ("Regarding his 'sense' of intellectual superiority, he is indeed very bright with a high IQ and has excelled in his academic endeavors.").  Particularly telling, however, is Zauder's own letter to the court.  It does contain some expressions of remorse, but read carefully the overall impression is not one of great contrition.  *See* Def.'s Mem. Ex. 53.[9]  The Government acknowledges that Zauder has accepted responsibility sufficiently for the reduction under U.S.S.G. § 3E1.1(a), (b), but his letter is quite consistent with Dr. Must's qualitative conclusions regarding the aspects of Zauder's attitudes that raise risks of re-offense.

Moreover, any account of Zauder's risk of recidivism must take account of his violation of his terms of pretrial release by using a computer he knew was monitored by Pretrial Services to access inappropriate sexual images of children.  This extraordinarily flagrant and reckless conduct—after he had just been arrested and placed on home detention with relatives, and had started his course of therapy—gives great reason to question his confidence that he poses no future risk.

Indeed, taking into consideration the repeated and persistent nature of the conduct, the at

---

[9] There may be a degree of subjectivity in assessing the degree of remorse expressed by the letter, but the Government respectfully submits that in it Zauder's overall tone when he describes his own achievements and the reputational consequences of his conviction, each of which he covers in great detail, is noticeably different from his tone when he references the harm caused by his offenses themselves, which he touches on briefly and at points almost seems to minimize.

best mixed psychological evaluations of the risk of recidivism posed by the defendant, and the defendant's reckless behavior leading to his bail revocation, this defendant's case is extremely serious.  The Government is concerned that a sentence at or near the statutory mandatory minimum, while still substantial, would not reflect the seriousness of the offense, sufficiently promote respect for the law or provide just punishment, or afford adequate specific or general deterrence.  Indeed, given the risk of recidivism, the Government harbors serious concerns that a sentence at or near the mandatory minimum will not adequately protect the public from further crimes by the defendant.

Accordingly, although the Government does not oppose a below-Guidelines sentence, a sentence substantially higher than the mandatory minimum term of 120 months is necessary to fulfill the purposes of sentencing.  Zauder victimized multiple children and a substantial sentence is necessary to provide just punishment for the harm he caused and to deter him from doing so again.

### B. *United States* v. *Dorvee* and Other Cases Not Involving Contact With Minors Are Inapposite

Zauder cites the Second Circuit's decision in *United States* v. *Dorvee* criticizing the child pornography sentencing guidelines, and suggests that his sentence be compared to those of individuals who did not sexually exploit minors.  Neither *Dorvee* nor such other cases are apposite.

The United States Sentencing Guidelines still provide strong guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005), *abrogated on other grounds by United States* v. *Fagans*, 406 F.3d 138, 142 (2d Cir. 2005).  Although Booker held that the Guidelines are no longer mandatory, it also held

15

that the Guidelines remain in place and that district courts must "consult" the Guidelines and

"take them into account" when sentencing.  *Booker*, 543 U.S. at 264.  As the Supreme Court

stated, "a district court should begin all sentencing proceedings by correctly calculating the

applicable Guidelines range"—that "should be the starting point and the initial benchmark."

*Gall* v. *United States*, 552 U.S. 38, 49 (2007).  After that calculation, however, a sentencing

judge must consider the seven factors outlined in Title 18, United States Code, Section 3553(a).

*See Gall*, 552 U.S. at 50 & n.6.  In determining the appropriate sentence, the statute directs

judges to "impose a sentence sufficient, but not greater than necessary, to comply with the

purposes" of sentencing.  18 U.S.C. § 3553(a)(2).

   The Second Circuit requires district courts to take special care to make an individualized

assessment of the appropriate sentence when applying the sentencing guidelines for child

pornography offenses.  In *United States* v. *Dorvee*, the Second Circuit has cautioned district

courts applying the sentencing guidelines for child pornography under U.S.S.G. § 2G2.2 to

"bear[] in mind that they are dealing with an eccentric Guideline of highly unusual provenance

which, unless carefully applied, can easily generate unreasonable results."  616 F.3d 174, 188

(2d Cir. 2010).  The Second Circuit has expressed concern that these guidelines "were developed

not on an empirical approach based on data about past sentences, but were Congressionally

directed," *United States* v. *Tutty*, 612 F.3d 128, 132 (2d Cir. 2010) (internal quotation marks and

brackets omitted), that the guidelines "provide for a series of enhancements that apply in

virtually every case, resulting in Guideline ranges that usually are near or above the statutory

maximum, even in run-of-the-mill cases," *id.* (internal quotation marks omitted), and that the

guidelines did not sufficiently distinguish between the sentences for ordinary first-time offenders

16

and for the most dangerous offenders, *id.*

In *Dorvee*, the Second Circuit vacated a 240-month sentence under U.S.S.G. § 2G2.2 as substantively unreasonable where, among other things, the district judge imposed the sentence in part on its "apparent assumption that [the defendant] was likely to actually sexually assault a child, a view unsupported by the record evidence," 616 F.3d at 183, and where the guidelines range prior to the application of U.S.S.G. § 5G1.1(a) exceeded the statutory maximum sentence, *id.* at 186-87.  In cases where the Guidelines range was substantially below the statutory maximum of all counts run consecutively, *Aumais*, 656 F.3d at 157, or where the defendant "actually sexually assaulted a child," *e.g.*, *United States* v. *Oehne*, 698 F.3d 119, 125 (2d Cir. 2012), the Second Circuit has found *Dorvee* distinguishable.  So too here.

This case is unlike *Dorvee*.  Zauder faces the Guidelines range he faces because of—and should receive a sentence reflecting—not what he might do, but what he did.  Unlike the defendant in *Dorvee*, Zauder "actually sexually assaulted a child," *Oehne*, 698 F.3d at 125. Indeed, as noted above, Zauder had multiple sexual contacts with multiple minors, all strangers apparently met over the Internet.  This fact sharply differentiates Zauder's case from *Dorvee* and those others in which the defendant's conduct was limited to the collection and distribution of child pornography.

Moreover, even as to the child pornography counts the case is unlike *Dorvee*.  The defendant's Sentencing Guidelines range, though high, does not exceed or even approach the statutory maximum of life imprisonment on Count One or the combined statutory maximum of life plus thirty years on all counts.  Contrary to the defendant's contention, Def.'s Mem. 12, even a 327-month sentence, without the application of good time credits, would result in the

17

defendant's release in his mid-50s, decades short of an average life expectancy.  *See Aumais*, 656

F.3d at 157 (distinguishing *Dorvee* where top end of guidelines range was 109 months lower

than the combined statutory maximum of all counts run consecutively).

Accordingly, although the Court should of course make a careful individualized

determination of the appropriate sentence in this case, the legal background and underlying facts

in this case are significantly different from those present in *Dorvee*.

### C.    The Treatment of Zauder's Sexual Contact with Minor-1 Under New Jersey Law

At Zauder's plea, the Court asked for information regarding the sentence that Zauder

would have received for his conduct involving Minor-1 had it been prosecuted under New Jersey

law instead of federally.  Had it been charged under New Jersey law, this encounter would likely

have resulted in substantially less sentencing exposure than Zauder currently faces, but this

comparison should not receive significant weight in determining Zauder's sentence given the

extremely serious nature of the totality of his conduct, which includes not only child

pornography offenses but other sexual contacts with minors.

Zauder's enticement of a 14-year old, who was more than 4 years younger than him, to

perform oral sex on him would have constituted Sexual Assault in violation of New Jersey

Statutes Annotated, Section 2C:14-2(c)(4).  Sexual assault is a crime of the second degree, for

which a court may impose a term of years between 5 years and 10 years.  N.J. Stat. Ann. §

2C:43-6(a)(2).  Although a combination of credits can render a defendant convicted of a crime of

the second degree eligible for parole after serving approximately 20% of the term of years

imposed, if a New Jersey court found that aggravating factors in Zauder's case outweighed

mitigating factors, the court could fix a minimum term of imprisonment before which the

defendant would be ineligible for parole, of up to half the term of years set.  N.J. Stat. Ann. §
2C:43-6(b).[10]

This comparison, however, is inapt.  It is hardly unusual for the Sentencing Guidelines
ranges (and the sentences actually imposed by federal courts) in a wide range of offenses, from
drug offenses to firearms offenses to frauds to crimes of violence, to be substantially higher than
the sentences defendants would face if prosecuted for similar conduct under the laws of various
states.  Congress, the Sentencing Commission, and the federal judiciary are not bound by the
value judgments of state legislatures or courts, and as a result federal sentences are often
longer.[11]

Beyond the general point, the statute governing Count One was specifically intended to
provide substantial punishment for the conduct at issue.  The Adam Walsh Child Protection and
Safety Act, Pub. L. No. 109-248, 120 Stat. 587 (July 27, 2006), specifically increased both the
mandatory minimum and the maximum terms of imprisonment applicable to violations of
Section 2422(b).  *Compare* 18 U.S.C. § 2422(b) (2006) (term of imprisonment of "not less than 5
years and not more than 30 years") *with* 18 U.S.C. § 2422(b) (term of imprisonment of "not less
than 10 years or for life').  At the time the Act was passed—when Congress clearly felt that

---

[10] Additionally, if a New Jersey court found, based on a mandated report, that Zauder's "conduct
was characterized by a pattern of repetitive, compulsive behavior" and that he was not amenable
to sex offender treatment (or if he refused such treatment), certain of the credits leading to early
parole eligibility would not be available, *see* N.J. Stat. Ann. § 2C:47-3(d), (f), (g).  Additionally,
parole would not be granted if the parole board determines by a preponderance of the evidence
that "there is a reasonable expectation that the offender will violate conditions of parole," N.J.
Stat. Ann. § 2C:47-5(a).

[11] Indeed, sometimes the decision to bring federal charges instead of state charges in a case is a
coordinated one made between state and federal executive officers who deem federal prosecution
to be appropriate precisely because it can offer lengthier sentences than state prosecution.

existing range of punishments for the offense were insufficient, both at the statutory minimum

and far above it—sexual assault in New Jersey was already a crime of the second degree,

carrying a 5-10 year term of imprisonment.  *See* N.J. Stat. Ann §. 2C:14-2(c)(4) (2006); *id.* §

2C:43-6(a)(2) (2006).  There is nothing unfair about Congress taking a different view of similar

conduct than the State of New Jersey.[12]

In any event, Zauder's conduct is far more serious than that single encounter.  As noted

above, in addition to the hundreds of images and videos of child pornography found on his

electronic devices, Zauder also induced Minor-2, also a stranger met through the Internet, to

masturbate for him and display his genitals in a video chat session, and in fact appears to have

engaged in similar conduct, both online and in person, with other minors.  The repetition of this

conduct is disturbing and underscores that Zauder's sentence for the federal crimes he did

commit, especially in light of the relevant conduct set forth in the PSR, should not be influenced

by the sentencing exposure Zauder would have faced had he been prosecuted for sexual assault

in New Jersey based on his encounter with Minor-1.

### D.    Sentencing Practices in Child Pornography Cases

At the time of Zauder's plea, the Court inquired into the sentencing practices of other

---

[12] Moreover, Section 2422(b) actually protects a somewhat different interest than the New Jersey sexual assault statute—the use of a facility of interstate commerce to cause the sexual activity. Though in some cases this element is significant only to establish Congress's jurisdiction, this case illustrates why Congress could reasonably find a federal interest in keeping interstate facilities such as the Internet free from such enticement.  Here the use of the interstate facility was not an outgrowth of a preexisting relationship.  Instead, Zauder and Minor-1 first contacted each other in an Internet chat and then arranged a meeting for a sexual encounter.  This type of enticement, between strangers in a chat room, can potentially pose a more far-reaching threat, and may be more difficult for parents or other guardians to prevent, than such enticement between persons with preexisting relationships or other non-Internet based connections.

judges in comparable cases.  The metrics publicly summarized by the United States Sentencing

Commission these metrics do not distinguish between child pornography offenses involving

sexual contact with minors (as here) and those limited to possession or distribution of child

pornography.  As to offenses involving contact, anecdotally, courts in this district often impose

substantial sentences at or near the Sentencing Guidelines ranges and well above 120 months.

The data publicly summarized by the Sentencing Commission is of limited value because

the statistics for offenses involving U.S.S.G. § 2G2.2, the child pornography guideline, do not

distinguish between cases (such as here) involving contact with minors, and cases not involving

such conduct.  The Sentencing Commission's published statistics for the Southern District of

New York in particular indicate that that in Fiscal Year ("FY") 2012, the district's mean prison

term for child pornography offenses was 72 months and the district's median term for such

offenses was 66 months, substantially below the national mean prison term of 132 months and

median of 92 months for such offenses.  U.S. Sentencing Commission, *Statistical Information

Packet: Fiscal Year 2012, Southern District of New York* (the "Statistical Packet") tbl. 7,

available at

http://www.ussc.gov/Data_and_Statistics/Federal_Sentencing_Statistics/State_District_Circuit/2

012/nys12.pdf.  In addition to failing to distinguish between contact and non-contact child

pornography offenses, these statistics do not account for the Sentencing Guidelines ranges faced

by any of the defendants in such cases,[13] and so are of limited relevance.

---

[13] The Statistical Packet does note the number of below-Guidelines sentences imposed in this
District by selected primary offense categories, *see* Statistical Packet tbl. 10, but child
pornography is not among them.  It does indicate that in this District in Fiscal Year 2012, 33.5%
of all sentences were within the Guideline range, 5.8% were non-Government sponsored

In its recent child pornography sentencing report, the Sentencing Commission has summarized some nationwide data on below-Guidelines sentences under § 2G2.2 in FY 2010. That year, 40.1% of sentences under that guideline for offenses involving receipt, transportation, or distribution ("R/T/D") were within the Guidelines range and 54.1% were below-range as a result of departures or variances other than substantial assistance departures.  Child Pornography Report ch. 6 tbl. 6-5.  For offenses under that guideline involving only possession, 39.5% were within-range and 56.1% were below-range.  *Id.*[14]  During that year, the extent of these departures and variances (i.e., the difference in percentage between the average guideline minimum and the average sentence imposed in cases receiving below-range sentences) in R/T/D cases was 35.8% (average reduction of 64 months) for non-government sponsored departures and variances, and 32.5% (average reduction 54 months) for government-sponsored departures and variances other than based on substantial assistance.  Child Pornography Report ch. 6 p. 136.  In possession-only cases the corresponding numbers were 43.0% (average reduction 32 months) for non-government sponsored departures and variances, and 49.5% (average reduction 42 months) for government-sponsored departures and variances other than for substantial assistance.  *Id.*  The Commission indicated that the extent of these departures and variances have been similar every year from FY 2005 until FY 2010, *id.*, and the data from FY 2012 is roughly similar as well.  *See* U.S. Sentencing Commission, *2012 Sourcebook of Federal Sentencing Statistics* ("2012

---

downward departures imposed pursuant to the Guidelines's departure authority, and 41.1% were downward variances imposed pursuant to the factors in 18 U.S.C. § 3553(a).  *Id.*  However, this data covers all offenses in aggregate and not child pornography offenses.

[14] This data is nationwide and does not distinguish between offenses involving contact with minors.  *See* Child Pornography Report ch. 6 at 126 n.27.

Sourcebook") tbls. 31, 31A, 31B, 31C, 31D, available at

http://www.ussc.gov/Research_and_Statistics/Annual_Reports_and_Sourcebooks/2012/sbtoc12.

htm.

      As noted above, the failure of this data to distinguish between offenses involving contact

with minors and offenses not involving such contact limits its utility.  Qualitatively, the

government can direct the Court to several recent cases which indicate that in cases involving

abuse of a minor, courts in this district impose substantial sentences.  *See, e.g.*, *United States* v.

*Day*, 10 Cr. 177 (CM) (imposing 840-month sentence for production and possession of child

pornography); *United States* v. *Fanelli*, 11 Cr. 237 (CS) (imposing 180-month sentence for case

involving child pornography distribution and possession); *United States* v. *Mendez-Rojas*, 11 Cr.

929 (PAE) (imposing 252-month sentence in case involving sexual exploitation of a child as well

as receipt and distribution of child pornography); *United States* v. *Decker*, 12 Cr. 343 (CS)

(imposing 180-month sentence for child pornography receipt and distribution where public

filings reveal that Guidelines range was 240 months and underlying facts involved production of

child pornography); *United States* v. *Conde*, 12 Cr. 593 (PGG) (imposing 240-month sentence

for production, possession, and distribution of child pornography); *United States* v. *Fantau*, 13

Cr. 358 (DLC) (imposing 120-month sentence where public filings reveal that the defendant

enticed a minor to engage in illicit sexual activity and possessed child pornography and that the

Guidelines range was 120-135 months).[15]

---

[15] Each case has a distinct set of facts, but the Government submits that the cases involving sexual contact with minors are a far more appropriate comparison than cases involving child pornography possession or distribution alone.  Notably, in none of the cases cited on page 5 of Zauder's memorandum was it established that the defendant had any actual contact with a minor.

Thus, although there are numerous below-Guidelines sentences in cases involving child pornography nationwide, the Government has been unable to obtain precise quantitative data regarding the number and extent of below-Guidelines sentences in child pornography cases involving contact with minors, as here, and anecdotal evidence suggests that courts in this district impose very substantial sentences at or near the Guidelines ranges in child pornography cases where the defendant had sexual contact with children.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court impose a sentence on the defendant below the applicable Guidelines range but substantially above the 120-month mandatory minimum sentence, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Dated: New York, New York
       December 11, 2013

                                        Respectfully submitted,

                                        PREET BHARARA
                                        United States Attorney
                                        for the Southern District of New York


                              By:    /s/ Paul M. Monteleoni
                                        Paul M. Monteleoni
                                        Assistant United States Attorney
                                        Tel.:  (212) 637-2219
                                        E-mail: paul.monteleoni@usdoj.gov